**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 15, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

In re:  SAMUEL JESSE CHRISTIAN
MORREALE,

     Debtor.

------------------------------

TOM H. CONNOLLY,

     Appellant,

v.

SAMUEL JESSE CHRISTIAN
MORREALE,

     Appellee.

No. 19-1072

_____

**Appeal from the Bankruptcy Appellate Panel**
**(BAP No. 18-063-CO)**
_____

Michael J. Pankow of Brownstein Hyatt Farber Schreck, LLP, Denver, Colorado, for
Appellant.

Jordan D. Factor of Allen Vellone Wolf Helfrich & Factor, P.C., Denver, Colorado
(Patrick D. Vellone, Matthew M. Wolf, Vandana S. Koelsch, and Brenton L. Gragg with
him on the brief), for Appellee.

_____

Before **LUCERO**, **PHILLIPS**, and **MORITZ**, Circuit Judges.

_____

**MORITZ**, Circuit Judge.

_____

The Bankruptcy Code permits a bankruptcy court to pay a Chapter 7 trustee using a formula based "upon all moneys disbursed or turned over in the case by the trustee to parties in interest." 11 U.S.C. § 326(a). Appellant Tom Connolly, the trustee for the Chapter 7 case of Appellee Samuel Morreale, seeks compensation based upon moneys disbursed not only in Morreale's Chapter 7 case, but also upon moneys disbursed in a related Chapter 11 case. The bankruptcy court and the Tenth Circuit's bankruptcy appellate panel (the BAP) both rejected Connolly's request, concluding that the language of § 326(a) did not support it. For the reasons discussed below, we agree that the plain language of § 326(a) permits awarding compensation to a Chapter 7 trustee based only on moneys disbursed in the case in which that trustee serves, and not on moneys disbursed in a related Chapter 11 case in which the trustee does not serve. Accordingly, we affirm the bankruptcy court's order.

## Background

Morreale owned the sole membership interest in Morreale Hotels, LLC (Hotels LLC), which in turn owned two properties in Denver, Colorado. Morreale also acted as Hotels LLC's manager and personally guaranteed certain loans that Hotels LLC obtained on the properties it owned. In 2012, Hotels LLC filed a petition for Chapter 11 bankruptcy protection (the Chapter 11 Case) and pursued reorganization. In 2013, Morreale filed his own Chapter 11 bankruptcy petition, which the bankruptcy court later converted to Chapter 7 (the Chapter 7 Case). The U.S. Trustee appointed Connolly as the Chapter 7 trustee in the Chapter 7 Case.

As trustee, Connolly assumed Morreale's membership interest in Hotels LLC.

2

Exercising that interest, Connolly appointed himself the new manager of Hotels LLC, thereby replacing Morreale. The bankruptcy court approved this replacement. Connolly abandoned reorganization of Hotels LLC and decided instead to liquidate Hotels LLC's properties.

Initially, Connolly anticipated that claims in the Chapter 7 Case would not be paid in full. But as the proceedings progressed, the market for commercial real estate in Denver "improved." App. vol. 3, 631. Hotels LLC's two properties ultimately sold for far higher prices than their estimated value just a few years earlier. As a result, the claims in the Chapter 11 Case were paid in full, Morreale's personal guaranties on the secured loans were satisfied, surplus funds in the Chapter 11 Case became part of the estate in the Chapter 7 Case (by virtue of Morreale's membership interest in Hotels LLC), and claims in the Chapter 7 Case were also likely to be paid in full. "By all objective measures, [the Chapter 11 Case] was a resounding success," according to the bankruptcy court. *Id.* at 632.

Connolly sought payment for his work as the manager of Hotels LLC in two ways. He first asked to be paid as part of the reorganization plan in the Chapter 11 Case. He withdrew that request after Morreale and the U.S. Trustee objected, and he ultimately received no payment in the Chapter 11 Case. Second, Connolly filed an interim compensation application in the Chapter 7 Case. In that application, he sought $260,000, an amount based on the moneys disbursed in both the Chapter 7 Case and to creditors who also held claims in the Chapter 11 Case.

The bankruptcy court granted Connolly's request in part. Specifically, it approved about $81,660 in compensation, an amount based only on moneys disbursed in the Chapter 7 Case. The bankruptcy court rejected the remainder of Connolly's request, concluding that the unambiguous language of "the statute simpl[y] does not allow the [bankruptcy c]ourt to approve additional compensation for the Chapter 7 [t]rustee on the basis of disbursements that were made to creditors in a separate Chapter 11 bankruptcy case." App. vol. 3, 639. The BAP agreed, finding that the plain language of the statute "means what it says[:] A Chapter 7 trustee's § 326(a) compensation is limited to that trustee's services in the case in which he or she was appointed to serve and must be calculated solely upon the moneys the trustee disbursed in that case." *Connolly v. Office of the U.S. Tr. (In re Morreale)*, 595 B.R. 409, 419 (B.A.P. 10th Cir. 2019).

Connolly appeals. "[W]e review the bankruptcy court's interpretation of [a] statute de novo." *First Nat'l Bank of Durango v. Woods (In re Woods)*, 743 F.3d 689, 693 (10th Cir. 2014); *see also Mathai v. Warren (In re Warren)*, 512 F.3d 1241, 1248 (10th Cir. 2008) (noting that we review decision of bankruptcy court, not decision of BAP, "whose rulings are not entitled to any deference (although they certainly may be persuasive)").

4

**Analysis**

In a Chapter 7 bankruptcy proceeding, a bankruptcy court may award a trustee "reasonable compensation" for the trustee's services. 11 U.S.C. § 330(a)(1)(A).[1] A Chapter 7 trustee's "reasonable compensation" is a "commission" determined by a statutory formula. § 330(a)(7). The formula caps the trustee's compensation:

> [T]he court may allow reasonable compensation under [§] 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25[%] on the first $5,000 or less, 10[%] on any amount in excess of $5,000 but not in excess of $50,000, 5[%] on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3[%] of such moneys in excess of $1,000,000, *upon all moneys disbursed or turned over in the case by the trustee to parties in interest*, excluding the debtor, but including holders of secured claims.

§ 326(a) (emphasis added). In other words, compensation for a Chapter 7 trustee is pinned to certain percentages of what we will call the § 326(a) "base"—the "moneys disbursed or turned over in the case by the trustee to parties in interest."[2] *Id.*

Applying this formula to Connolly, the bankruptcy court first compensated Connolly in the amount of $53,250 based on the first $1 million in "moneys" he

---

[1] A Chapter 7 trustee may also receive compensation in other ways, such as from a portion of the debtor's filing fee. *See* § 330(b)(1).

[2] By contrast, in a Chapter 11 case, the court must consider not only the § 326(a) formula but also certain factors about the trustee's work to "determin[e] the amount of reasonable compensation" for the trustee, such as the time the trustee devoted to the case and the benefits of the trustee's work to the case. § 330(a)(3). And prior to the Bankruptcy Abuse Prevention and Consumer Protect Act of 2005, these § 330(a)(3) factors also applied to Chapter 7 trustees. *See* Pub. L. No. 109-8, § 407, 119 Stat. 23, 106 (amending § 330(a)(3) to apply only to "an examiner, trustee under chapter 11, or professional person" and adding § 330(a)(7)).

"disbursed or turned over," *id.*: 25% of the first $5,000 he disbursed, or $1,250; 10% of the next $45,000, or $4,500; and 5% of the next $950,000, or $47,500. The bankruptcy court further awarded an additional 3% of moneys over $1 million that Connolly disbursed. *See id.* And because the bankruptcy court considered only the $1.947 million in moneys disbursed in the Chapter 7 Case, that additional 3% came to about $28,410 (3% of $947,000), for a total compensation of about $81,660.

Of course, Connolly had asked to be compensated based on a combined $10.379 million: the $1.947 million disbursed in the Chapter 7 Case and the $8.432 million disbursed in the Chapter 11 Case. But the bankruptcy court found that § 326(a) precluded Connolly from including moneys disbursed in the Chapter 11 Case in the § 326(a) base for the Chapter 7 Case. Relying on dictionary definitions and other provisions of the Bankruptcy Code, the bankruptcy court found that "the plain and ordinary meaning of the phrase 'in the case' under [§] 326(a) and as applied in this dispute is simple and clear. 'In the case' means in this case: *In re Morreale*, Case No. 13-27310 (Bankr. D. Colo.)," that is, the Chapter 7 Case. App. vol. 3, 636. The bankruptcy court also found that none of the cases Connolly cited supported his argument to the contrary.

The BAP affirmed the bankruptcy court's decision. Relying on principles of grammar and the context of the Bankruptcy Code, the BAP found that "as trustee in the Chapter 7 [C]ase, Connolly's compensation is based upon the amounts he disbursed or turned over in the Chapter 7 [C]ase." *In re Morreale*, 595 B.R. at 417. Further, the BAP noted that "[n]othing in § 326(a) or § 330(a)(7) speaks to

6

additionally compensating a Chapter 7 trustee who is simultaneously acting as a manager of a separate or related Chapter 11 debtor under a court order." *Id.* Specifically, because Connolly was the manager of Hotels LLC and neither a trustee nor a professional person appointed under 11 U.S.C. § 327 in the Chapter 11 Case, his work in the Chapter 11 Case was "voluntary" and could not form the basis of his § 326(a) compensation in the Chapter 7 Case. *Id.* at 417–18.

On appeal, Connolly challenges the bankruptcy court's and the BAP's interpretation of § 326(a) on three principal grounds. First, he contends that the word "in," which appears in § 326(a)'s description of moneys disbursed "in the case," permits a bankruptcy court to include in the § 326(a) base moneys that "relate to" or "[a]rise from" the trustee's performance of his Chapter 7 duties. Aplt. Br. 25. Second, he argues that the bankruptcy court and the BAP misconstrued caselaw that supports awarding the compensation he seeks here. Third, he asserts that excluding the $8.432 million from the § 326(a) base will create a conflict between § 326(a) and a trustee's 11 U.S.C. § 704(a)(1) duty to maximize the value of the bankruptcy estate. We consider each argument in turn.

We begin our interpretation of § 326(a) of the Bankruptcy Code as we do any other statute: by considering its plain language in the context of the overall Code. *See In re Woods*, 743 F.3d at 693–94. If the Code does not define a word, we give that word its "ordinary, contemporary, common meaning." *Id.* at 698 (quoting *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014)).

7

Section 326(a) provides that a Chapter 7 trustee may receive compensation as a percentage of "all moneys disbursed or turned over *in the case* by the trustee to parties in interest." (Emphasis added). Although this appeal primarily concerns the phrase "in the case," Connolly in fact disputes the bankruptcy court's and the BAP's understanding of only one word within that phrase: the word "in." As to the remainder of that phrase, the bankruptcy court and the BAP held, and Connolly agrees, that "the case" means the Chapter 7 Case. Thus, Connolly only challenges "what . . . it mean[s] for moneys to be disbursed or turned over 'in' the case." Rep. Br. 2.

The Bankruptcy Code does not define "in." Morreale offers a proposed definition that tracks the definition adopted by the bankruptcy court, contending that "in" means "[w]ithin the limits, bounds, or area of." Aplee. Br. 16 (alteration in original) (quoting Am. Heritage Dictionary of the English Language 885 (5th ed. 2019)). In reply, Connolly argues that this definition only "works if one is speaking of a physical place," which a bankruptcy case is not. Rep. Br. 2. "One wonders what exactly the 'limits,' 'bounds' or 'area' of a bankruptcy case may be," Connolly muses. *Id.*

Connolly's argument is curious, at best, considering that Connolly himself advocates for a "meaning of 'in the case' . . . that would bring [the disbursements] *within the bounds* of the Chapter 7 [C]ase." Aplt. Br. 24 (emphasis added). Further, it conflicts with our "ordinary, contemporary[, and] common" understanding of what "in" a bankruptcy case means. *In re Woods*, 743 F.3d at 698 (quoting *Sandifer*, 571

8

U.S. at 227). As the bankruptcy court and the BAP explained—and as Connolly does not dispute—a bankruptcy case is "a single, specific bankruptcy proceeding initiated under the Bankruptcy Code." App. vol. 3, 636; *accord In re Morreale*, 595 B.R. at 417; *see also Bankruptcy Case*, Black's Law Dictionary (11th ed. 2019). And many different events or actions can certainly occur "in" a bankruptcy case: one can, orally or in writing, assert claims *in* the case; make arguments *in* the case; move for relief *in* the case; and so forth. Those claims, arguments, and motions occur "within the bounds of . . . a single, specific bankruptcy proceeding." App. vol. 3, 636.

Further, the dictionary that Morreale relies on illustrates "in"—in the "[w]ithin the limits, bounds, or area of" sense—with the example phrase "born in the spring." Am. Heritage Dictionary of the English Language 885 (5th ed. 2019). This suggests a temporal relationship, not a "physical place." Rep. Br. 2. Other dictionaries agree that the meaning of "in" is not limited to physical places. *See, e.g.*, *in, prep. 1*, OED Online, https://www.oed.com/view/Entry/92970 (last visited April 23, 2020) (explaining that general sense of "in" "express[es] the relation of inclusion, situation, position, existence, or action, within limits of space, time, condition, circumstances, etc."). Thus, we conclude that the meaning of "in" is plain, and interpreting that meaning to include activities occurring within the boundaries of a bankruptcy case does not implicate physical boundaries, as Connolly suggests.

Of course, as Connolly contends, there are "other *possible* logical relationships of the disbursements" to the case. Aplt. Br. 24 (emphasis added). There are also "*alternative* definitions" of "in." Rep. Br. 2 (emphasis added). Connolly points

9

specifically to a definition of "in" that would encompass his insistence that disbursements occur "in" the case if they "[a]rise from" performance of the Chapter 7 trustee's duties in the case or "relate to property administered" during the performance of those duties. Aplt. Br. 25. But even if "in" can mean other things, "a statutory provision whose words might have multiple meanings is not necessarily ambiguous. 'Ambiguity is a creature not of definitional possibilities but of statutory context.'" *Am. Fed'n of Gov't Emps., Local 1592 v. Fed. Labor Relations Auth.*, 836 F.3d 1291, 1295 (10th Cir. 2016) (quoting *Brown v. Gardner*, 513 U.S. 115, 118 (1994)).

Indeed, as the bankruptcy court and the BAP explained, the context of the Bankruptcy Code does not support Connolly's argument that any action by a trustee of a particular Chapter 7 proceeding that arises from or relates to that proceeding is "in the case." Within the statute itself, the phrase "in the case" is followed with the phrase "by the trustee." § 326(a). Only one person serves as a trustee in a Chapter 7 bankruptcy case. 11 U.S.C. § 701(a)(1) (explaining that U.S. Trustee "shall appoint one disinterested person . . . to serve as interim trustee *in the case*" (emphasis added)); *see also* § 701(b), (c); 11 U.S.C. § 702(b), (d). And a court may allow compensation to that one trustee "for the *trustee's* services" based on "'moneys' he or she distributes 'in the case.'" App. vol. 3, 636 (emphasis added) (quoting § 326(a)); *accord In re Morreale*, 595 B.R. at 417. But Connolly was not the Chapter 7 trustee of the Chapter 11 Case: the U.S. Trustee appointed Connolly as Chapter 7 trustee only in the Chapter 7 Case. By contrast, Connolly's involvement in the

10

Chapter 11 Case stemmed from his decision to exercise Morreale's membership interest in Hotels LLC by appointing himself as manager of Hotels LLC, the Chapter 11 debtor-in-possession. Connolly therefore disbursed the $8.432 million in the Chapter 11 Case not as the Chapter 7 trustee of the Chapter 7 Case but as the manager of the Chapter 11 debtor, Hotels LLC. Thus, the $8.432 million was not disbursed "by the trustee" of the Chapter 7 Case. § 326(a). And § 326(a) permits compensation only for the "*trustee's* services." *Id.* (emphasis added).

In sum, we reject Connolly's arguments that the plain language of § 326(a) allows a Chapter 7 trustee to include in his or her § 326(a) base moneys disbursed in a case other than the case in which he or she serves as trustee.

Nevertheless, Connolly next argues that caselaw supports his reading of the statute. As he did below, he primarily relies on *In re Macco Properties, Inc.*, 540 B.R. 793 (Bankr. W.D. Okla. 2015). While he acknowledges that *Macco* is not binding on this court, he argues that it is "closely on point with the issues in the appeal." Aplt. Br. 28. We do not find *Macco* persuasive here. *Macco* involved the compensation application of a Chapter 11 trustee for a Chapter 11 debtor that operated a property-management enterprise. *Macco*, 540 B.R. at 800–01. The bankruptcy court allowed the trustee to include in his § 326(a) base the moneys disbursed by special-purpose entities controlled by the debtor and managed by the Chapter 11 trustee, some of which were also bankrupt. *Id.* at 848. Thus, as the BAP noted, "the fact pattern here is somewhat similar to that in *Macco*." *In re Morreale*, 595 B.R. at 418. But critically, as the BAP also noted, the court in *Macco* "did not

11

have occasion to analyze in detail § 326(a)'s 'in the case' language." *Id.* Indeed, the court in *Macco* cited no statute or caselaw to support its decision to include those other entities' disbursements in the trustee's § 326(a) base. *See Macco*, 540 B.R. at 848. Accordingly, *Macco* does not persuade us to stray from § 326(a)'s plain language.

Connolly cites several other cases to support his argument, but none of those cases consider the meaning of the phrase "in the case" in § 326(a). *See In re Schautz*, 390 F.2d 797, 798 (2d Cir. 1968) (interpreting statute governing trustee compensation that predated § 326(a) and did not include phrase "in the case"); *In re Franchi Equip. Co., Inc.*, 452 B.R. 352, 360 (Bankr. D. Mass. 2011) (concluding that bankruptcy court had jurisdiction to award compensation under § 326(a) to Chapter 7 trustee with statutory duty to administer debtor's retirement plan); *In re Rybka*, 339 B.R. 464, 469–70 (Bankr. N.D. Ill. 2006) (concluding that proceeds of property sale disbursed to party in interest counted in § 326(a) base even though proceeds did not pass through trustee's bank account, only through account of trustee's agent). Further, each of these cases involved situations where assets disbursed by a trustee in a single bankruptcy case could be included in the compensation base, even if such assets were not technically part of a debtor's estate. *See In re Schautz*, 390 F.2d at 797 (including in compensation base full sale price of real property owned jointly by estate and individual not in bankruptcy); *In re Franchi Equip. Co. Inc.*, 452 B.R. at 360 (suggesting non-estate pension-plan assets managed by trustee and paid to beneficiaries could be included in compensation base); *In re Rybka*, 339 B.R. at 471

12

(including in § 326(a) base money disbursed through account of trustee's agent). In contrast, the question here is whether a Chapter 7 trustee may calculate the § 326(a) base by combining moneys disbursed in the Chapter 7 proceeding where he or she serves as Chapter 7 trustee with moneys disbursed in a separate Chapter 11 proceeding where he or she does not serve as Chapter 7 trustee. We therefore find these cases, like *Macco*, unavailing.

Connolly next argues that not including the $8.432 million disbursed in the Chapter 11 Case as part of the compensation calculation in the Chapter 7 Case "creates a conflict between [§] 326(a) and [§] 704(a)(1)." Aplt. Br. 33. Section 704 directs Chapter 7 trustees to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." § 704(a)(1). Connolly contends that § 704 imposes a duty on Chapter 7 trustees "to maximize the value of the estate." Aplt. Br. 33 (quoting *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352 (1985)). And because managing Hotels LLC maximized the value of the Chapter 7 Case's estate, he insists that he "ought to be . . . compensate[d] . . . for performing statutorily mandated duties." *Id.*

Yet despite this general duty to maximize estate value, the Bankruptcy Code did not specifically impose a duty on Connolly to manage Hotels LLC or even to do everything he believed was necessary to maximize the estate's value. For instance, although trustees possess extensive powers and responsibilities, the Bankruptcy Code does not give trustees unfettered discretion to take any action whatsoever in the name

13

of maximum estate value. *See, e.g.*, 11 U.S.C. § 365(b)-(d) (limiting trustee's power

to assume or reject executory contracts and unexpired leases); 11 U.S.C. § 547(c)

(limiting trustee's power to avoid preferential transfers). Further, § 326(a) caps

Chapter 7 trustees' compensation by "moneys disbursed," not efforts expended. *See*

§ 326(a); *compare* § 330(a)(3) (mandating consideration of "all relevant factors"

when awarding compensation to Chapter 11 trustees), *with* § 330(a)(7) (limiting

compensation of Chapter 7 trustees to § 326(a) formula). In fact, by tying

compensation to moneys disbursed to creditors, § 326(a) does not guarantee that

trustees will be paid at all for carrying out their duties; as the bankruptcy court noted,

"[i]f the Chapter 7 liquidation process does not garner sufficient funds for

distributions to creditors," then no § 326(a) compensation is available. App. vol. 3,

626; *see also* § 326(a). Further, Connolly acknowledges that nothing *required* him to

manage Hotels LLC himself: he states that he did so because he "*believed*" doing so

would maximize the estate's value, Rep. Br. 14 (emphasis added), and because he

believed other options would have been "less effective," Aplt. Br. 22. Thus, we

decline to accept Connolly's implicit argument that § 704(a)(1) required him to

manage Hotels LLC, and we consequently reject his argument that an interpretation

of § 326(a) limiting compensation to a percentage of moneys disbursed in the

Chapter 7 Case somehow undermines a trustee's duty under § 704(a)(1).[3]

---

[3] Connolly also disputes the BAP's characterization of his work in the Chapter 11 Case as "voluntary," as well as its statement that he could not receive compensation for his work in the Chapter 11 Case absent his appointment in that case as a Chapter 11 trustee or professional person under § 327. Aplt. Br. 20 (quoting *In*

14

Finally, Connolly argues that as single-member pass-through entities become more common, our holding will result in increasing underpayment of Chapter 7 trustees. He further cautions that our holding will limit the tools available to trustees to maximize estate value and will incentivize litigious debtors. But forays into such "'practical considerations' and 'policy considerations'" are inappropriate for us to consider where, as here, the language of the Bankruptcy Code is plain. *WD Equip., LLC v. Cowen (In re Cowen)*, 849 F.3d 943, 948–49 (10th Cir. 2017) (citation omitted) (first quoting *Weber v. SEFCU (In re Weber)*, 719 F.3d 72, 80 (2d Cir. 2013), then quoting *Thompson v. Gen. Motors Acceptance Corp., LLC*, 566 F.3d 699, 703 (7th Cir. 2009)). Accordingly, we decline to consider Connolly's policy-related arguments.

## Conclusion

Section 326(a) permits calculating a Chapter 7 bankruptcy trustee's compensation using only moneys disbursed by the trustee in the case in which the trustee serves. Finding § 326(a)'s language plain, we affirm the bankruptcy court.

---

*re Morreale*, 595 B.R. at 418). We reject these arguments for two reasons. First, while BAP decisions may be persuasive, we review only the decision of the bankruptcy court. *See In re Warren*, 512 F.3d at 1248. So any error the BAP may have committed by characterizing Connolly as a volunteer is not relevant to our review of the bankruptcy court's decision here. Second, § 326(a) permits compensation only "of the *trustee* for the *trustee's* services." § 326(a) (emphasis added). The issue before us is whether Connolly could be compensated in the Chapter 7 Case for his work as the Chapter 7 trustee, not whether or how he may seek compensation in the Chapter 11 Case for his work in that proceeding.